UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| JACKI NICOLE JUZYSTA, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) CAUSE NO.: 1:18-CV-4-TLS |
| NANCY A. BERRYHILL,<br>Acting Commissioner of the<br>Social Security Administration, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Jacki Nicole Juzysta seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for disability insurance benefits. The Plaintiff argues that the Commissioner wrongfully denied her Social Security benefits and erred by: (1) failing to incorporate limitations from all the medically determinable impairments, both severe and non-severe, into the RFC and not considering the combined impact; and (2) overemphasizing the Plaintiff's daily activities.

**BACKGROUND**

On July 8, 2014, the Plaintiff filed her initial claim for disability, asserting that she was disabled and had been so since March 31, 2003. (R. 18.) On July 26, 2016, the Plaintiff appeared with her counsel and testified at a hearing before an Administrative Law Judge (ALJ). (*Id*. at 39.) On September 19, 2016, the Plaintiff received an unfavorable decision from the ALJ. (*Id*. at 15–29.) The Plaintiff challenged the ALJ's decision, and on November 7, 2017, the Appeals Council rendered its decision and issued a Notice of Appeals Council Action, denying the Plaintiff's

Request for Review. (*Id*. at 1.) Thereafter, on July 5, 2018, the Plaintiff timely filed her Complaint in this Court against the Acting Commissioner of the Social Security Administration [ECF No. 1].

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has not engaged in SGA since 2003, the year in which the Plaintiff alleged she became disabled and when she was last insured for disability benefits. (R. 22.)

The ALJ also discussed the four rules pursuant to 20 CFR § 404.130 to determine when the Plaintiff was insured for purposes of establishing a period of disability or becoming entitled to disability insurance benefits. (*Id*.) These four rules require that the Plaintiff must also be "fully insured" pursuant to 20 C.F.R. § 404.132. (*Id*.) The Plaintiff failed to meet the criteria under any of the rules: (1) the Plaintiff did not have at least 20 quarters of coverage in a 40-quarter period of time; (2) the Plaintiff did not have sufficient quarters of coverage in at least one-half of the quarters during the period ending with the quarter she became disabled and beginning with the

quarter after the quarter in which she turned 21 years old; (3) the Plaintiff was never found to be disabled by the Social Security Administration; and (4) the Plaintiff did not meet the criteria of statutory blindness. (R. 21–22.) Thus, the ALJ determined that the Plaintiff last met the insured status requirements of the insured status requirements of the Social Security Act on March 31, 2003. (*Id.* at 20.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under § 404.1520(c). In this case, the ALJ determined that the Plaintiff had the following severe impairments: learning disorder and "residuals from a motor vehicle accident" that occurred in February 2003 (20 C.F.R. 404.1520(c)). (*Id.* at 22.) The ALJ determined that the Plaintiff's alleged asthma, recurrent bronchitis, thyroid problems, high cholesterol, GERD, migraines, psychosis, bipolar disorder, PTSD, depression, and anxiety were not medically determinable impairments on or before the last day insured. (*Id*. at 23.) The ALJ stated that these impairments were not mentioned in the medical evidence of record until 2012, almost ten years after the date the Plaintiff was last insured. (*Id*.) The ALJ stated that, furthermore, there was nothing in the record to indicate that the Plaintiff took medications or received mental health treatment in or around 2003. (*Id*.) The ALJ also noted that there was no evidence in the record that, on or before the date last insured, the claimant had disorders of the spine with muscle atrophy or motor loss plus reflex or sensory deficits; that she had spina arachnoiditis, or that she was unable to ambulate effectively. (*Id*. at 24.)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering

[the claimant's] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do physically, despite her limitations—to determine whether she can perform "past relevant work," § 404.1520(a)(4)(iv) or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

The ALJ determined that the Plaintiff had only a mild limitation in her ability to perform activities of daily living, no limitation in her ability to maintain social functioning, and moderate limitation in her ability to sustain concentration. (R. 24.) The ALJ stated that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that the Plaintiff had the RFC to perform a limited range of light work as defined in 20 CFR 404.1567(b), except: "[t]he claimant could not climb ropes, ladders, or scaffolds and she was only occasionally able to kneel, crouch, crawl, use ramps and stairs, and balance, as well as occasionally bend and stoop in addition to what was required to sit." (*Id.* at 25.)

The ALJ then assessed the Plaintiff's RFC by evaluating the objective medical evidence and the Plaintiff's subjective symptoms. After analyzing the record, the ALJ concluded that the Plaintiff was not disabled as of her last-insured date. The ALJ found that the Plaintiff's medically determinable impairments could reasonably have been expected to cause some of the alleged symptoms on and before the last date insured. (*Id.* at 26.) The ALJ, however, found that the Plaintiff's and her mother's testimony were not "entirely consistent with the medical evidence and other evidence in the record for the period on or before the date last insured. (*Id.*) The ALJ stated that the Plaintiff had engaged in SGA from 1999 – 2001, cared for her two children when they were young, cared for her paralyzed husband, did not lose custody of her children until well

4

after her car accident in 2003, was independent in various daily activities, and worked after the date last insured. (*Id*. at 26–27.) The ALJ noted that "[a]lthough her earnings in these years did not exceed the substantial gainful activity limit, they still suggest that she was not as limited as she and her mother alleged on or before the date last insured. Although she alleged that she was given special help at some of these jobs, this was not verified by any of her former employers." (*Id*.) The ALJ also stated that the Plaintiff's current husband's comments were of little value as he did not know the Plaintiff on or before her date last insured. (*Id*. at 26.) The ALJ concluded that objective medical evidence or treatment records did not support the Plaintiff's subjective testimony, and thus, the ALJ discounted the Plaintiff's subjective symptoms, finding the Plaintiff not credible. (*Id*. at 26–27.)

The Plaintiff had past relevant work as a kitchen helper, stocker, small parts assembler, cashier II, fast food worker, and dietary aid. (*Id*. at 28.) The ALJ determined that, in comparing the Plaintiff's residual functional capacity with the physical and mental demands of the Plaintiff's past work, the Plaintiff was able to perform her job as a small parts assembler. (*Id*.) The ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there were other jobs that existed in significant numbers in the national economy that the claimant also could have performed (20 C.F.R. §§ 404.1569 and 404.1569(a))." (*Id*.) The ALJ stated: "Based on the testimony of the vocational expert, the undersigned concludes that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (*Id*.) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act as of her alleged onset date. (*Id*. at 28.)

The Plaintiff sought review of the ALJ's decision by the Appeals Council. (*Id.* at 1.) The Appeals Council subsequently denied review (*id*), making the ALJ's decision the final decision of the Commissioner. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 308. A court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [his] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

**ANALYSIS**

On appeal to this Court, the Plaintiff claims that the ALJ committed several errors: First, that the ALJ erred in not incorporating limitations from all the medically determinable impairments, both severe and non-severe, into the RFC and erred in not considering the combined impact thereof, and second, that the ALJ improperly overemphasized the Plaintiff's daily activities.

**A. Incorporation of Impairments into RFC**

An ALJ is tasked with determining a claimant's RFC and, in doing so, the ALJ must consider all medically-determinable impairments, including those which are not severe. § 404.1545(a). The claimant's RFC must be assessed based on all relevant evidence in the record. *Id*. The Plaintiff challenges the ALJ's RFC determination. (Pl.'s Br. at 11–14.) The Plaintiff alleges that the ALJ did not account for the Plaintiff's limitations in concentration, persistence, and pace (CPP), nor limitations related to the Plaintiff's cervical spine impairment. (*Id.*) The Plaintiff alleges that the ALJ's main hypothetical, and RFC that it is derived from, did

7

not account for limitations in CPP factors. (*Id.* at 12.) The Plaintiff alleges that, while the ALJ limited the Plaintiff to simple, routine, and repetitive tasks, this limitation is insufficient under the standard articulated in *Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014). (*Id.*) The Plaintiff also argues that the ALJ did not incorporate any limitations related to cervical rotation, flexion, and extension in the RFC. (*Id*. at 13.) The Commissioner argues that the ALJ reasonably found that the Plaintiff could perform a reduced range of unskilled, light work and that the RFC accounted for the Plaintiff's limitations. (Def.'s Br. at 9.)

The Plaintiff misunderstands *Yurt*. First, *Yurt* does not mandate that the exact phrase "concentration, persistence, or pace" be invoked in an ALJ's opinion. *Id.* at 875. Second, *Yurt* does not establish a per se rule that an RFC of unskilled work is insufficient to address moderate limitations in concentration, persistence, or pace. The Court in *Yurt* determined that there was a failure to build an accurate and logical bridge between the evidence of mental impairments and the hypothetical mental RFC. *Id*. at 859. This Court has upheld an RFC and hypothetical for unskilled work, despite a moderate limitation in CPP, where the record supported the ALJ's decision. *See, e.g.*, *Veldhuizen v. Berryhill*, No. 4:15-cv-103-PRC, 2017 WL 1030843, at *12 (N.D. Ind. Mar. 16, 2017) ("Thus, the ALJ did not simply assume that a limitation to a range of simple tasks would accommodate Plaintiff's moderate difficulties in concentration, persistence, or pace but instead relied on the final conclusion of the reviewing psychologists of a residual functional capacity for simple tasks."); *Walker v. Colvin*, No. 4:16-CV-3, 2017 WL 1252820, at *5 (N.D. Ind. Feb. 10, 2017) ("I think that the ALJ adequately included Walker's mental limitations in his hypothetical questions to the vocational experts.").

Such is the case here. The ALJ considered the Plaintiff's CPP difficulties and incorporated them appropriately. The ALJ found that the Plaintiff's learning disorder was a

8

severe impairment and that she had a moderate limitation in her ability to sustain CPP. (R. 22, 24.) The ALJ noted, however, that the Plaintiff worked from 1999 until 2001, even if her earnings in those years did not exceed SGA levels. (*Id*. at 26–27.) Further, none of the Plaintiff's employers during that time verified that she required extra assistance while performing her duties. (*Id*.) Thus, the ALJ found that the "claimant could perform simple, routine, and repetitive tasks that could be learned through short demonstration and up to 30 days, maintain the concentration required to perform simple tasks, remember simple work-like procedures, and make simple work-related decisions." (*Id*. at 25.)

The Plaintiff also argues that the RFC did not account for limitations related to her cervical spine impairment. (Pl.'s Br. at 13–14.) It is the Plaintiff's burden to produce medical evidence to support her claim of disability prior to her date last insured, and she has failed to satisfy this burden. *Milliken v. Astrue*, 397 F. App'x 218, 225 (7th Cir. 2010) (citing *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008)). There was nothing persuasive in the record to indicate that the Plaintiff took medications or received treatment on a regular or consistent basis before March 31, 2003, and the medical record around this time is sparse. (R. 27.) The ALJ noted that the Plaintiff was hospitalized in February 2003 following her motor vehicle accident, but explained that a CT scan of the Plaintiff's head was normal, x-rays of her mid-back and chest were normal, an x-ray of her elbow and shoulder were normal, and an x-ray of her cervical spine was normal with the exception of a spasm. (*Id*. at 27, 739–48.) The Plaintiff did not indicate that she had taken medications or received treatment from orthopedic, neurological, and pain management specialists on a regular or consistent basis before March 31, 2003. (*Id*. at 27.) State agency physicians and psychologists who reviewed the Plaintiff's medical records noted that there was insufficient evidence of a severe mental impairment on or before the date last insured.

9

(*Id.* at 27, 88, and 96.) The Plaintiff has not produced persuasive medical evidence to otherwise suggest that she was disabled on or before March 31, 2003.

As with the Plaintiff's CPP limitations, the ALJ addressed the Plaintiff's physical limitations. The ALJ's RFC accounted for the Plaintiff's cervical spine impairment as the RFC finding contained specific restrictions to address any sitting, standing, walking, and postural limitations. (*Id.*) The ALJ limited the Plaintiff to "lifting, carrying, pushing, and pulling 10 pounds frequently and 20 pounds occasionally and, in an eight-hour period, sitting six hours in an eight-hour work day and standing and/or walking six hours in an eight-hour work day." (*Id.*) Thus, the Court's ruling in *Yurt* is distinguishable because the ALJ used medical opinions to craft hypothetical questions for the VE, thus he adequately incorporated the claimant's mental and physical limitations. (*Id.* at 25, 80–82.)

The ALJ stated that his RFC finding was more restrictive than the assessments of the state agency physicians and psychologists, "but there is no basic disagreement with these medical experts, who have been specifically trained in evaluating disability for the Social Security Administration, that the claimant was not disabled on or before March 31, 2003." (*Id.* at 27.) The ALJ must explain the weight given to a state agency physician's opinion, which he did here. *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011). Accordingly, the Court finds that the ALJ did not fail to incorporate limitations from all the medically determinable impairments, both severe and non-severe into the RFC, and to consider the combined impact thereof.

### B. Emphasis on Daily Activities

The Plaintiff maintains that the ALJ improperly evaluated and overemphasized the Plaintiff's daily activities from 2002–2003. (Pl.'s Br. at 15.) The ALJ acknowledged the Plaintiff's report that she had assistance in her caregiving for her husband and children, but that

10

the record did not show mental or physical impairments that would have precluded her from performing those activities without help in 2002–2003. (R. 23.) The ALJ noted that the Plaintiff's testimony indicated that she could not work in 2003 due to her caretaking responsibilities, not due to her own impairments. (*Id.*) The ALJ acknowledged the Plaintiff's care for her husband and children, stating: "She was his caregiver and she was taking him places. She bathed him, fed him, took care of the house and took care of the children." (*Id.*) The ALJ acknowledged that the Plaintiff alleged that her mother and sister assisted her during this time period but noted: "it is not documented in the record that she needed help to such an extent in 2002 or 2003 that she would have been unable to care for her husband, child, and household without such help." (*Id.*)

It is true that he Plaintiff's ability to perform limited daily activities does not equate to an ability to sustain full-time work. *See, e.g.*, *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014) ("[W]e have urged caution in equating [daily] activities with the challenges of daily employment in a competitive environment, especially when the claimant is caring for a family member."); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons (in this case, Bjornson's husband and other family members), and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.").

The ALJ, however, did not ignore "qualifications as to *how* [she] carried out those activities." *Craft*, 539 F.3d at 660 (emphasis in original). The ALJ relied on the Plaintiff's daily activities as only one part of his assessment and did not ignore the Plaintiff's comments as to

11

how she performed her duties. The ALJ acknowledged the Plaintiff's testimony regarding the physical and mental strain of caring for her husband and did not ignore the Plaintiff's testimony that she required assistance. (R. 23, 26, 63–64.) The ALJ noted that the record, however, did not show mental or physical impairments that would have precluded the Plaintiff from performing those activities without help (*Id.* at 23, 26). This is not like *Beardsley*, in which the caregiving duties differed dramatically from the type of jobs that the ALJ believed that the claimant could perform. *Beardsley*, 758 F.3d at 838. The ALJ reasonably considered the activities in evaluating the effect of the Plaintiff's impairments on her ability to perform unskilled, light work. (*Id.* 23–24, 26–27.)

Further, the Plaintiff stated that she could not work in 2003 due to her responsibilities to her husband, rather than any limitations caused by her own impairments. *See Wright v. Comm'r of Soc. Sec. Admin.*, No. 1:16-cv-382-TLS, 2018 WL 898117, at *5 (N.D. Ind. Feb. 15, 2018) ("In other words, even if a plaintiff has a relatively short work history, statements made by the plaintiff concerning why she left the workplace are relevant to the ALJ's credibility analysis."). It is appropriate for an ALJ to examine statements that are "probative on the issue of whether the Plaintiff truly stopped working because she is disabled." *Id*. Therefore, the Plaintiff has not demonstrated that the ALJ improperly overemphasized her daily activities.

Substantial evidence supports the ALJ's decision, and this Court will not substitute its judgment for that of the ALJ by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility.

## CONCLUSION

For the reasons stated above, the decision of the Commissioner is AFFIRMED.

SO ORDERED on February 21, 2019.

                                               s/ Theresa L. Springmann
                                              CHIEF JUDGE THERESA L. SPRINGMANN
                                              UNITED STATES DISTRICT COURT